Janice M. Bellucci, Esq., SBN 108911
(JMBellucci@aol.com)
LAW OFFICE OF JANICE M. BELLUCCI
1215 K Street, 17th Floor
Sacramento, CA 95814
Tel:   (805) 896-7854
Fax:  (916) 503-2401

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, an individual, | Case No.:  5:17-cv-407 |
| Plaintiff, | |
| vs. | **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| CITY OF TEMECULA, an incorporated California Municipality; and DOES 1 to 10, inclusive, | |
| Defendants. | **[42 U.S.C. Section 1983]** |

## **INTRODUCTION**

1. This civil rights action challenges provisions of Chapter 9.60 of the Temecula Municipal Code that constitute residency restrictions for registered sex offenders (the "Temecula Residency Restrictions" or "the Ordinance") because, on their face and as applied, the Temecula Residency Restrictions are preempted by California state law, and violate the Fourteenth Amendment to the United States Constitution, the Ex Post Facto Clause of the United States Constitution, and are unconstitutionally vague and overbroad as more specifically alleged herein.

---
1
**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## JURISDICTION AND VENUE

2. This court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331, 1367(a), 1343(a), and 2201, as well as 42 U.S.C. Section 1983.

3. Under 28 U.S.C. Section 1391(b), venue is proper in this Federal district because Defendant City of Temecula is a municipality in this district and the events giving rise to the claims have occurred and continue to occur in this district.

## PARTIES

4. Plaintiff John Doe ("Plaintiff") is and at all times material to this action was a resident of the State of California as well as a citizen of the United States. Plaintiff is required to register as a sex offender pursuant to California Penal Code Section 290, *et seq*. (hereinafter, a "Registrant"). Plaintiff resides in Riverside County and is therefore in geographic proximity to the City of Temecula. Plaintiff is in search of a permanent residence, and would establish a residence in the City, but is prohibited from spending even one night in the City by the Ordinance, including but not limited to, its penalties which include incarceration and/or fines.

5. The City of Temecula ("Temecula" or "Defendant") is an incorporated municipality located in Riverside County, California. Temecula adopted the Ordinances at issue here through the five-member Temecula City Council and enforces the Ordinance through the Temecula Police Department.

6. The true names and capacities of Defendants sued as Does 1 through 10 are unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Plaintiff will seek leave to amend this Complaint, if necessary, to reflect the true names once they have been ascertained.

7. Temecula and Does 1 through 10 are collectively referred to herein as "Defendants."

# FACTS

8. The Temecula City Council adopted Ordinance No. 09-02 on February 24, 2009, which was subsequently codified as Temecula Municipal Code, Title 9, Chapter 9.60, Sections 9.60.010 through 9.60.050, entitled "Temecula Sex Offender Ordinance" (hereinafter, the "Ordinance"). As originally enacted in 2009, the Ordinance contains provisions that regulate areas of the City in which Registrants may reside ("Residency Restrictions").

**The Ordinance's Residential Exclusion Zones**

9. As enacted and currently enforced, the Ordinance prohibits "a Sex Offender" from residing within a "two thousand (2,000) foot radius of any child day care center, park, or school." Ordinance § 9.60.030 (hereinafter, a "Residential Exclusion Zone").

10. The Ordinance defines a "Sex Offender" as "any person for whom registration is required pursuant to Section 290 of the California Penal Code." Ordinance § 9.60.020. The definition of "Sex Offender" in the Ordinance includes all Registrants, even those whose convictions did not involve a minor. The definition of "Sex Offender" in the Ordinance also includes Registrants who are not currently serving terms of parole or probation.

11. The Ordinance defines "child day care center" as "a licensed facility that provides non-medical care on a less than twenty-four (24) hour basis to children in need of personal services, supervision or assistance essential for sustaining the activities of daily living or for the protection of the individual." Ordinance § 9.60.020. Upon information and belief, and based upon publicly available records, there are at least sixteen (16) "child day care centers" within Temecula.

12. The Ordinance defines "Park" as "an open space where children regularly gather." Ordinance § 9.60.020. Upon information and belief, and based upon publicly available records, there are thirty-nine (39) public parks within Temecula, and

potentially dozens of other "open space" parcels or property within Temecula that fit the definition of "Park."

13. The Ordinance defines "School" as "the buildings and grounds of any public or private school used for the education of children in kindergarten or in grades 1 through 12 inclusive." Ordinance§ 9.60.020. Upon information and belief, and based upon publicly available records, there are at least forty-four (44) "Schools" within Temecula.

**Temecula's Residential Exclusion Zones Cover Virtually All Residential Property Within the City**

14. On information and belief, the Temecula Ordinance is more expansive than other sex offender residency restrictions imposed by similar municipalities in this jurisdiction. That is, the City of Temecula comprises 30.167 square miles and has a density level of 3,300 per square mile. The impact of the Ordinance's Residential Exclusion Zones upon available housing in Temecula is therefore amplified and more expansive relative to those of cities of comparable size.

15. On information and belief, the Temecula Residency Restrictions exclude Registrants from virtually all affordable housing in the City of Temecula, including affordable multifamily housing. On information and belief, the median gross rent in the City of Temecula is over $1,600 per month.[1] This is significant because, in the case *In re Taylor*, the California Supreme Court held that, when assessing the impact of residency restrictions, the appropriate measure is not all available housing, but the availability of affordable housing of the type that Registrants are likely to rent: <u>multifamily units for $850 per month or less</u>. *In re Taylor*, 60 Cal. 4th 1019, 1029 (2015). Specifically, the Supreme Court treated single-family residences as irrelevant to its analysis because Registrants are "unlikely candidates to rent single-family homes."

---

[1] http://www.city-data.com/city/Temecula-California.html

4
**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

60 Cal 4th at 1029. The Supreme Court also ignored housing that could not be obtained for less than $850 per month, which is representative of the SDI and SSDI benefits available to registrants. 60 Cal 4th at 1030. Therefore, because the Temecula Residency Restrictions exclude Registrants from virtually all multifamily parcels in Temecula, the Temecula Residency Restrictions banish Registrants from virtually all affordable housing in Temecula.

16. The penalties for any violation of the Ordinance are significant and include a misdemeanor "punishable by a fine of not more than one thousand dollars ($1,000.00), by imprisonment for a period of not more than six (6) months, or by both such fine and imprisonment." Ordinance § 9.60.050.

17. By definition, the Temecula Residency Restrictions do not apply to anyone who is not required to register as a sex offender pursuant to Penal Code section 290. The Temecula Residency Restrictions also do not apply to Registrants who "established the residency prior to the effective date" of the Ordinance [*i.e.*, March 2009], or who established a residence "prior to the initial operation of the child day care center, park, or school." Ordinance § 9.60.040. Accordingly, Registrants who have maintained the same residence since March 2009 are not subject to the Ordinance; however, such Registrants are prohibited from moving their original residence to a different residence within Temecula.

**Temecula's Residency Restrictions are Irrational and Injurious to Public Safety as Confirmed by Case Law and Studies by Subject Matter Experts**

18. Because Temecula continues to enforce the Temecula Residency Restrictions in a manner that prohibits Plaintiff and all Registrants who currently reside outside of Temecula from acquiring a residence in Temecula, the Temecula Residency Restrictions accomplish the unconstitutional goal of banishment, do not serve any legitimate government purpose, and are not appropriately tailored or related to any professed or lawful purpose.

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

19. Because Temecula continues to enforce the Temecula Residency Restrictions in a manner that prohibits Plaintiff and all Registrants who currently reside outside of Temecula from acquiring a temporary residence in Temecula for even one night, the Temecula Residency Restrictions accomplish the unconstitutional goal of banishment, do not serve any legitimate government purpose, and are not appropriately tailored or related to any professed or lawful purpose.

20. Because Temecula continues to enforce the Temecula Residency Restrictions in a manner that prohibits Registrants who already reside within Temecula from moving to a new residence within that city, the Temecula Residency Restrictions accomplish the unconstitutional goal of banishment, do not serve any legitimate government purpose, and are not appropriately tailored or related to any professed or lawful purpose.

21. California's Proposition 83, also known as "Jessica's Law" (effective November 6, 2006), as codified in subsections (b) and (c) of California Penal Code section 3003.5, authorizes local governments to enact ordinances that further restrict the residency of Registrants who are subject to the residency restrictions of Penal Code section 3003.5(a). However, because Penal Code section 3003.5(a) applies only to parolees, Jessica's Law does not authorize local governments to impose any residency restrictions on non-parolees, including individuals who are currently serving terms of probation. *People v. Lynch*, 2 Cal. App. 5th 524 (2016). Moreover, to the extent that local governments may impose residency restrictions on parolees, the California Supreme Court has ruled that such restrictions may not be imposed upon Registrants in a manner that deprives them of their constitutional rights and liberty interests, including their right to be free from arbitrary, oppressive, and unreasonable laws that bear no rational relationship to the state's goal of protecting residents. *In re Taylor*, 60 Cal. 4th 1019, 1042 (2015).

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

22.     The Temecula Residency Restrictions subject Registrants in Temecula to arbitrary, oppressive, and unreasonable governmental action in that they are blanket proscriptions applied to all affected Registrants without regard to the particularized circumstance of each individual or any rational relation to public safety.  See *Taylor*, 60 Cal. 4th at 1042.  The irrationality of the Temecula Residency Restrictions is evidenced from the arbitrariness of their application to many foreseeable and everyday situations, including but not limited to:

    a.     <u>Imposing a residency restriction of 2,000 feet</u> which, according to California's Sex Offender Management Board ("CASOMB"), "is too great a distance to be able to see anything or anyone in a meaningful way."  Indeed, in opposing residency restrictions outright, CASOMB concludes that "There is no rational basis that supports 2,000 feet as a distance that increases the safety of children."[2]

    b.     <u>Prohibiting residency in proximity to child day care centers, schools, parks, and school bus stops</u>, and thereby limiting Registrants' proximity to those locations primarily during times such as evenings and weekends when children are unlikely to be present at those locations.

    c.     <u>Prohibiting residency in proximity to public transportation stops</u>, which are not areas in which children generally congregate.

    d.     <u>The Ordinance's application to Registrants whose offense involved adults</u>, but who are nevertheless barred from residing in proximity to schools when their offense involved neither schools nor children, the class of individuals that the Ordinance supposedly seeks to protect.

23.     The Temecula Residency Restrictions bear no rational relationship to any legitimate governmental purpose in that they contradict and hamper the objectives of

---

[2] CASOMB, HOMELESSNESS AMONG CALIFORNIA'S REGISTERED OFFENDERS – AN UPDATE (Aug. 2011), at 25, *available at* http://www.casomb.org/docs/Residence_Paper_Final.pdf.

Jessica's Law; fail to protect the public; and deprive Registrants of stable homes, family support, social and medical services, and other means necessary to live productive, law-abiding lives, as confirmed by numerous authorities, including but not limited to:

    a. *In re Taylor*, 60 Cal. 4th 1019, 1042 (2015) (Blanket enforcement of residency restrictions "cannot survive rational basis scrutiny because it has hampered efforts to monitor, supervise, and rehabilitate [Registrants] in the interests of public safety, and as such, bears no rational relationship to advancing the state's legitimate goal of protecting children . . . .").

    b. *People v. Lynch*, 2 Cal. App. 5th 524, 528 (2016) ("[A]pplying the residency restriction to nonparolees would conflict with the purpose of registration. We believe section 290 registration laws aim at permitting local enforcement authorities to monitor these registrants in the community.  Less restriction on housing sites for probationers permits this supervision function. Also, restricting access to housing opportunity disrupts the rehabilitation process for the broader group of men and women on probation; they should focus on treatment and rehabilitation instead of a limited residential market.").

    c. *Doe v. City of Lynn*, 472 Mass. 521, 531 & n.15 (2015) (As a supervised and stable home has been recognized as a factor that minimizes the sex offender's risk of re-offense, th[e] disruption [imposed by residency restrictions] is inconsistent with the Legislature's goal of protecting the public." (citing *Taylor*, 60 Cal. 4th 1019)).

    d. CALIFORNIA SEX OFFENDER MANAGEMENT BOARD, HOMELESSNESS AMONG CALIFORNIA'S REGISTERED OFFENDERS – AN UPDATE (Aug. 2011), at 26 ("CONCLUSIONS.  Based on all that is known about sex offender recidivism and the nature of most sex offenses involving children, there is no evidence that residency restrictions are related to preventing or deterring sex crimes against children.  To the contrary, the evidence strongly suggests that residency

restrictions are likely to have the unintended effect of increasing the likelihood of sexual re-offense.").[3]

e. Jill S. Levenson, Ph.D., *Hidden Challenges: Sex Offenders Legislated into Homelessness*, JOURNAL OF SOCIAL WORK, at 8 (June 22, 2016) (collecting scholarship that confirms the generally low risk of re-offense presented by Registrants, and concluding that "Residential restriction laws should be abolished in their current form" because "they contradict decades of research demonstrating that when criminal offenders return to communities they are much more likely to reintegrate successfully when they have meaningful employment, stable housing, and the support of law-abiding family and peers.").[4]

24. Defendants have expended, are expending, and/or will expend public funds to enforce, prepare to enforce, and/or attempt to enforce the Temecula Residency Restrictions. Defendants have a mandatory duty to refrain from expending public funds to enforce, prepare to enforce, and/or attempt to enforce the Temecula Residency Restrictions because they are invalid and unconstitutional.

25. In addition, while the Temecula Residency Restrictions do not by their terms impose burdens on persons other than Registrants, the Temecula Residency Restrictions, as applied, may impose burdens upon family members of Registrants and upon others who reside with or wish to reside with Registrants, with the exceptions as previously defined.

26. To the extent that the Temecula Residency Restrictions impose burdens on Registrants who are not currently serving terms of parole, the Temecula Residency Restrictions are preempted by California state law and are therefore unconstitutional because California state law occupies the field of regulations that govern Registrants'

---

[3] http://www.casomb.org/docs/Residence_Paper_Final.pdf.
[4] http://jsw.sagepub.com/content/early/2016/06/21/1468017316654811.abstract

daily lives, including the locations in which they may be present. *People v. Nguyen*, 222 Cal. App. 4th 1168, 1180-81 (2014).

27. Defendants lack either a compelling or a substantial legitimate governmental interest in restraining the civil liberties of Registrants in the manner expressly provided by the Temecula Residency Restrictions.

28. In addition, the Temecula Residency Restrictions are not the least restrictive means to further any compelling or substantial governmental interest including, but not limited to, protecting children as the Temecula Residency Restrictions purport.

29. Further, the Temecula Residency Restrictions fail to pass constitutional muster because their restrictions are not sufficiently narrowly tailored to serve a legitimate government interest.

30. The Temecula Residency Restrictions are overly broad and burden substantially more constitutionally protected conduct than is necessary to further any legitimate governmental interest.

31. The Temecula Residency Restrictions are unconstitutionally vague in that they fail to permit persons of ordinary intelligence from knowing what the Ordinance requires, and likewise encourage arbitrary and discriminatory enforcement of the Ordinance. For example, the Ordinance imposes a Residential Exclusion Zone comprising "a two thousand foot radius" around any child day care center, park, or school, but does not indicate how that distance is to be measured, including whether the definition of "school" includes parking lots, administrative buildings, and other property that is not used for instructional purposes. *Cf. Doe v. Snyder*, 101 F. Supp. 3d 672, 682-84 (E.D. Mich. 2015); *Valenti v. Hartford City*, No. 15-cv-63, 2016 U.S. Dist. LEXIS 165618 (N.D. Ind. Dec. 1, 2016).

32. Finally, the Temecula Residency Restrictions are an arbitrary, politically motivated act imposed by a local government in response to popular sentiments, based upon misinformation, which seeks retribution against Registrants who constitute a

socially outcast minority. In addition, the Temecula Residency Restrictions also lend themselves to discriminatory enforcement as well as the suppression of the constitutional rights of Registrants as well as individuals who reside with them, including spouses and children.

33. For the reasons stated above, the Temecula Residency Restrictions are in violation of the Fourteenth Amendment to the United States Constitution, the Ex Post Facto Clause of the United States Constitution, and are unconstitutionally vague and overbroad.

# FIRST CLAIM
## (State Law Preemption)

34. Plaintiff re-alleges paragraphs 1 through 33 of this Complaint as though fully set forth herein.

35. Article XI, Section 7 of the California Constitution provides that "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Accordingly, local ordinances in conflict with, or preempted by, state law are invalid and unenforceable.

36. California state law contains a comprehensive scheme regulating the daily lives of Registrants, including the areas in which they may be present. In enacting this comprehensive scheme, the Legislature evinced an intention to fully occupy the field of sex offender regulation. *People v. Nguyen*, 222 Cal. App. 4th 1168 (2014), *rev. denied* 2014 Cal. LEXIS 3030 (2014).

37. California Penal Code section 3003.5(c), also known as "Jessica's Law," does not authorize local government to impose residency restrictions on individuals other than parolees. *People v. Lynch*, 2 Cal. App. 5th 524, 528 (2016). Accordingly, those provisions of the Temecula Residency Restrictions which apply to Registrants who are not currently on parole are preempted and unconstitutional.

## SECOND CLAIM

### (42 U.S.C. § 1983 – Fourteenth Amendment)

38. Plaintiff re-alleges paragraphs 1 through 37 of this Complaint as though fully set forth herein.

39. By leaving in place, enforcing, and/or threatening to enforce the Temecula Residency Restrictions, Defendants deprive Plaintiff and other Registrants of rights guaranteed by the Fourteenth Amendment of the United States Constitution, including the Substantive Due Process and Equal Protection Clauses as well as the rights to family autonomy, privileges and immunities, and the right to travel. Defendants commit these unconstitutional acts under color of authority of law.

40. Continued enforcement or threats of enforcement of the Temecula Residency Restrictions violates the rights of Plaintiff and other Registrants which are protected by the Fourteenth Amendment of the United States Constitution. Therefore, the Temecula Residency Restrictions are void, both facially and as applied, and should be enjoined and their previous enforcement nullified. The injuries Plaintiff is suffering as a result of the actions of Defendants are severe, irreparable, and ongoing. Immediate and permanent injunctive relief is necessary to halt and prevent further occurrence of these ongoing constitutional deprivations and infliction of irreparable harm.

## THIRD CLAIM

### (42 U.S.C. § 1983 – Ex Post Facto Clause)

41. Plaintiff re-alleges paragraphs 1 through 40 of this Complaint as though fully set forth herein.

42. By leaving in place, enforcing, and/or threatening to enforce the Temecula Residency Restrictions, Defendants deprive Plaintiff and other Registrants of rights guaranteed by the Ex Post Facto Clause of the United States Constitution. Defendants commit these unconstitutional acts under color of authority of law.

43. The Temecula Residency Restrictions apply to Registrants whose dates of conviction precede the effective date of the Ordinance. The Temecula Residency Restrictions also apply to Registrants who attempt to reside in Temecula after their dates of conviction.

44. As evidenced by its express terms, the purpose of the Temecula Residency Restrictions is punitive. The Temecula Residency Restrictions are codified within a section of the Temecula Municipal Code to which criminal penalties apply. Application of the Temecula Residency Restrictions is conditioned upon the conviction of a criminal offense, and the Temecula Residency Restrictions do not apply to individuals who have not been convicted of a criminal offense. The Temecula Residency Restrictions are enforced by the San Bernardino County Sheriff's Department, which is authorized to cite and to arrest individuals who violate the Temecula Residency Restrictions pursuant to its general police power. Violations of the Temecula Residency Restrictions are misdemeanors and subject to the Temecula Municipal Code's general penalty and enforcement provisions applicable to all misdemeanor violations of the Temecula Municipal Code. Such penalties include fines and imprisonment, and can be levied for each day in which a Registrant violates the Temecula Residency Restrictions. Additionally, the Temecula Residency Restrictions impose affirmative disabilities and restraints on Registrants by severely limiting the areas of Temecula in which they can reside, work, and obtain needed medical, psychological and other necessary services, and by operating as a *de facto* banishment of Registrants from Temecula. Further, the Temecula Residency Restrictions severely stigmatize and shame Registrants, as well as severely limit various liberty interests of Registrants, which are conditions consistent with the intent to punish.

45. Additionally, the effects of the Temecula Residency Restrictions are so overwhelmingly punitive as to negate any intent to enact or enforce the Temecula Residency Restrictions as non-punitive civil or regulatory measures. The Temecula

Residency Restrictions are codified within a section of the Temecula Municipal Code to which criminal penalties apply. The Temecula Residency Restrictions are applied only to those who have been convicted of a criminal offense, but govern conduct that is not criminal and which in the vast majority of cases was not related to the offense that gave rise to the conviction. The Temecula Residency Restrictions are enforced by the San Bernardino County Sheriff's Department, which is authorized to cite and to arrest individuals who violate the Temecula Residency Restrictions pursuant to its general police power. Violations of the Temecula Residency Restrictions are misdemeanors and subject to the Temecula Municipal Code's general penalty and enforcement provisions applicable to all misdemeanor violations of the Temecula Municipal Code. Such penalties include fines and imprisonment, and can be levied for each day in which a Registrant violates the Temecula Residency Restrictions. Additionally, the Temecula Residency Restrictions impose affirmative disabilities and restraints on Registrants by severely limiting the areas of Temecula in which they can reside, work, and obtain needed medical, psychological and other services, and by operating as a *de facto* banishment of Registrants from Temecula. The Temecula Residency Restrictions also impose severe stigma and shame on affected Registrants, and severely limit various liberty interests of Registrants, among other traditional aims of punishment. Finally, the Temecula Residency Restrictions are overwhelmingly punitive in effect because they bear no rational connection to a non-punitive purpose. That is, the Temecula Residency Restrictions apply in a blanket fashion to all Registrants without regard to the actual risks they currently pose to public safety, and because the Temecula Residency Restrictions impose affirmative disabilities and restraints far in excess of whatever non-punitive purpose the Temecula Residency Restrictions purportedly serve.

46. Continued enforcement or threats of enforcement of the Temecula Residency Restrictions violates the rights of Plaintiff and other Registrants which are protected by the Ex Post Facto Clause of the United States Constitution. Therefore, the

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Temecula Residency Restrictions are void, both facially and as applied, and should be enjoined and their previous enforcement nullified. The injuries Plaintiff is suffering as a result of the actions of Defendants are severe, irreparable, and ongoing. Immediate and permanent injunctive relief is necessary to halt and prevent further occurrence of these ongoing constitutional deprivations and infliction of irreparable harm.

## FOURTH CLAIM

### (42 U.S.C. § 1983 – Void for Vagueness)

47. Plaintiff re-alleges paragraphs 1 through 46 of this Complaint as though full set forth herein.

48. The Temecula Residency Restrictions are unconstitutionally vague in that they fail to permit persons of ordinary intelligence from knowing what the Ordinance requires, and likewise encourage arbitrary and discriminatory enforcement of the Ordinance.

49. By leaving in place, enforcing, and/or threatening to enforce the Temecula Residency Restrictions, Defendants unconstitutionally enforce an ordinance that deprives Plaintiff and other Registrants of rights which are protected by the Void for Vagueness Doctrine extended into the Due Process Clauses of the Fourteenth Amendment of the United States Constitution, as well as the First Amendment to the United States Constitution. Therefore, the Temecula Residency Restrictions are void, both facially and as applied, and should be enjoined and their previous enforcement nullified. The injuries Plaintiff is suffering as a result of the actions of Defendants are severe, irreparable, and ongoing. Immediate and permanent injunctive relief is necessary to halt and prevent further occurrence of these ongoing constitutional deprivations and infliction of irreparable harm.

///

///

///

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## FIFTH CLAIM

## (28 U.S.C. §2201 – Declaratory Relief)

50. Plaintiff re-alleges paragraphs 1 through 49 of this Complaint as though fully set forth herein.

51. An actual controversy exists between Plaintiff and Defendants regarding the constitutionality and enforceability of the Temecula Residency Restrictions.

52. Plaintiff is entitled to a declaration of rights with regard to the Temecula Residency Restrictions.

## PRAYER FOR RELIEF

Because of the actions alleged above, Plaintiff seeks judgment against Defendants as follows:

a. That Defendants be enjoined in perpetuity from enforcing Title 9, Chapter 9.60.030 of the Temecula Municipal Code;

b. That Title 9, Chapter 9.60.030 of the Temecula Municipal Code be declared null and void as unconstitutionally vague and in violation of the Fourteenth Amendment to the United States Constitution, Article I, Section 7 of the California Constitution, and the Ex Post Facto Clause of the United States Constitution;

c. That Plaintiff recovers from the Defendants, under 42 U.S.C. Section 1988, all of Plaintiff's reasonable attorney's fees, costs and expenses of this litigation; and

d. That Plaintiff recovers such relief as the Court deems just and proper.


Dated: March 3, 2017                LAW OFFICE OF JANICE M. BELLUCCI


                                    By: __/S/ *Janice M. Bellucci*__
                                    Janice M. Bellucci
                                    Attorney for Plaintiff